1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

| | |
|---|---|
| EQUITY FUNDING LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ILLINOIS UNION INSURANCE<br>COMPANY, an Illinois Corporation,<br><br>    Defendant. | CASE NO. C12-5359 BHS<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

12

13

14

15

16

17

18

ILLINOIS UNION INSURANCE
COMPANY, an Illinois Corporation,

    Third-Party Plaintiff,

    v.

WENTWOOD ROLLINGBROOK, L.P.,
a Delaware limited partnership; and
BANK OF AMERICA, N.A., a National
Banking Association,

    Third-Party Defendants.

19

20

21

22

This matter comes before the Court on Defendant Illinois Union Insurance Company's ("IUIC") motion for summary judgment (Dkt. 45). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On April 23, 2012, the Court initiated this action by severing Plaintiff Equity Funding, LLC's ("Equity") claims from a related action.  Dkt. 1.  Equity alleges that, because of an improper endorsement, it did not receive insurance proceeds from IUIC. *Id*. ¶¶ 5.1–5.6.  Equity claims that the contract of insurance requires IUIC to protect the interests of Equity and Equity has been damaged because "it has not received the benefits of the contract."  *Id*. ¶¶ 5.2, 5.5.

On October 30, 2012, IUIC filed an amended answer and included a third-party complaint against Third-Party Defendant Bank of America, N.A. ("BANA").  Dkt. 34 ("Complaint").

On January 23, 2012, IUIC filed a motion for summary judgment.  Dkt. 45.  On February 13, 2013, Equity responded.  Dkt. 51.  On February 20, 2012, IUIC replied. Dkt. 53.

# II. FACTUAL BACKGROUND

The material facts are undisputed and have been stipulated to by Equity and IUIC. Dkt. 27.  They are as follows:

IUIC issued a policy for the period of November 27, 2007 to November 27, 2008, to Graoch Associates Limited Partnership ("Graoch"). The policy insured  properties owned by Groach and its related entities including an apartment complex known as Creekside in Baytown, Texas that Wentwood Rollingbrook, LP ("Wentwood") owned. The policy has a standard suit limitation provision requiring that legal action against IUIC be brought within two years after damage to the insured property occurred:

**Legal Action Against Us**. No one may bring a legal action against us under this Coverage Part unless:

    1. There has been full compliance with all of the terms of this Coverage Part; and

    2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Dkt. 19, Exh. 1 ("Policy") at 64.

The policy also has a Loss Payable Provision. It provides that in the event of damage to property covered by the policy, IUIC will make loss payments jointly to the owner and lender:

**Loss Payable**. For Covered Property in which both you and a Loss Payee shown in the Declarations have an insurable interest, we will:

    1. Adjust losses with you [the named insured]; and

    2. Pay any claim for loss or damage jointly to you [the named insured] and the Loss Payee [the lender], as interests may appear.

Policy at 84.

The Loss Payable Provision further provides that all of the terms of the policy apply directly to the Loss Payee: "When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy." The Lender's Loss Payable Agreement then provides: "All of the terms of this Coverage Part will then apply directly to the Loss Payee."

Equity's predecessor, Centrum Financial Services ("Centrum"), was the lender on the Creekside property and the loss payee for Creekside scheduled on the policy.

On or about September 13, 2008, hurricane Ike damaged the Creekside property. At the time, Derek Edmonds, CEO of Centrum, and Bruce Berreth, President of Centrum,

1    knew of the damage to Creekside and that such damage was insured. They have each

2    stated:

3            We became aware that Creekside Apartment Complex was hit by
             Hurricane Ike when it made landfall in the fall of 2008. . . . We were aware
4            that various insurance claims were being submitted under the policy of
             insurance for damaged [sic] caused by Hurricane Ike.
5
     Dkt. 19-2, Declaration of Derek Edmonds, ¶¶ 4 & 5; Dkt. 19-3, Declaration of Bruce
6
     Berreth, ¶¶ 4 & 5.
7
             In October 2008, Graoch, on behalf of Wentwood, requested that IUIC advance to
8
     it $750,000 for damage sustained to Creekside due to Hurricane Ike. Wentwood
9
     requested that the check be sent to its risk manager in Tacoma and be made jointly
10
     payable to "Wentwood Rollingbrook LP and Centrum Financial Services."  IUIC
11
     prepared and delivered the check as requested by its insured and, in accordance with the
12
     policy terms, made the check jointly payable to Wentwood and Centrum.
13
             Gary Gray, controller of various Graoch entities, informed Centrum's CEO, Derek
14
     Edmonds, of the forthcoming IUIC check on October 9, 2008:
15
             Gray: Subject: Insurance !! Hey there—I am getting an initial
16           insurance draw first thing in the morning on Creekside Apartments
             (Wentwood Rollingbrook). As per insurance custom, it is a two party
17           cheque, payable to Wentwood Rollingbrook and Centrum. Is it OK if I
             cruise in to see you guys tomorrow in order to get endorsed, in our bank,
18           and get guys paid? Thanks much!
             Edmonds: Hi Gary, Sure, no problem. I'll be around all day
19           tomorrow, so feel free to come by anytime. . . .

20   Dkt. 46, Declaration of John L. Williams, Exh. A.

21           Wentwood's representative received IUIC's $750,000 check on October 10, 2008

22   and endorsed it on Wentwood's behalf. Wentwood presented the check to Bank of

1  America for deposit in a Wentwood account. In addition to Wentwood's endorsement,

2  the check bore a stamp with Centrum's name and address. Bank of America accepted the

3  check for deposit into Wentwood's account. Bank of America was also IUIC's bank.

4  Bank of America transferred $750,000 to Wentwood's account and debited IUIC's

5  account in that amount.

6  ## III. DISCUSSION

7      In this case, IUIC moves for summary judgment because Equity's claim is time

8  barred and because IUIC did not breach the insurance contract.  As a threshold matter,

9  Equity argues that the motion should be denied because the "claims are based on the

10  conversation of the payment check, not the contract of insurance."  Dkt. 51 at 10.  No

11  matter how liberally one reads the operative complaint, the only claim asserted by Equity

12  against IUIC is the breach of contract claim.  Dkt. 1, ¶¶ 5.1–5.6 ("CLAIMS AGAINST

13  ILLINOIS UNION").  Therefore, any argument based on a claim against IUIC for

14  conversion is without merit because it is outside the scope of the pleadings.

15      Equity also argues that "[t]his lawsuit involves a single policy of insurance."  Dkt.

16  51 at 10.  Equity's complaint explicitly contradicts this statement because it identifies

17  IUIC's contract of insurance as the "Primary Policy" (Dkt. 1, ¶ 3.2) and RSUI's contract

18  of excess insurance coverage as the "Policy" (*id.*, ¶ 3.1).  Therefore, Equity's arguments

19  based on a single policy are completely without merit.  The Court will more substantively

20  address the remaining issues.

21

22

**A.    Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The

1  nonmoving party may not merely state that it will discredit the moving party's evidence

2  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

3  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

4  nonspecific statements in affidavits are not sufficient, and missing facts will not be

5  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

6  **B.    Suit Limitation**

7         "[I]nsurance companies have the opportunity to limit their exposure by including

8  express suit limitation provisions that comply with RCW 48.18.200(1)(c)." *Schwindt v.*

9  *Commonwealth Ins. Co.*, 140 Wn.2d 348, 359 (2000). RCW 48.18.200(1)(c), which

10 governs the validity of suit limitation clauses in insurance policies, authorizes limitation

11 clauses if they are not for "a period of less than one year from the date of the loss."

12        In this case, IUIC argues that "the Court should give effect to the contractual suit

13 limitation . . . ." Dkt. 53 at 5. The Court agrees. The Policy provides that any action

14 must be "brought within 2 years after the date on which the direct physical loss or

15 damage occurred." Policy at 64. It undisputed that the damage occurred in September

16 2008 and that Equity filed this action in December 2011. It is clear that the suit was filed

17 more than two years after the damage occurred. Therefore, unless some exception

18 applies, Equity's suit is barred by the suit limitation provision.

19        Equity argues that the suit limitation period should be tolled under the discovery

20 rule. Dkt. 51 at 8–10. A cause of action accrues when an injured party knows, or in the

21 exercise of due diligence should have discovered, the factual basis of the cause of action.

22 *Beard v. King County*, 76 Wn. App. 863, 867 (1995). Even if the discovery rule applied

1   to rewrite the suit limitation provision, Equity's officers knew when the damage occurred

2   and knew that the initial installment check issued.  Based on that knowledge, Equity's

3   claim against IUIC accrued in October 2008 at the latest, which is more than two years

4   before this suit was filed.  Therefore, the Court grants IUIC's motion for summary

5   judgment because Equity's breach of contract claim is time-barred by the Policy's suit

6   limitation provision.

7   **C.      Breach of Contract**

8          Even if the Court ignores the suit limitation provision, IUIC has shown that it fully

9   performed its obligations under the contract.  "If a check is payable to more than one

10  payee, delivery to one of the payees is deemed to be delivery to all of the payees."  RCW

11  62A.3-420, Comment 1.  Once a jointly payable check has been paid, it extinguishes the

12  debt for which it was presented.  RCW 62A.3-310(b)(1).

13         In this case, IUIC met its obligations under the contract and its debt was

14  extinguished.  It's undisputed that the jointly payable check was delivered to Wentwood

15  and was paid by Bank of America.  Therefore, contrary to Equity's position (Dkt. 51 at

16  13), there are no questions of fact as to these two facts.  Although Equity provides some

17  non-binding authority to the contrary (Dkt. 51 at 12–13), Washington's commercial code

18  is clear and IUIC has provided overwhelming authority for the proposition that its

19  obligations have been fulfilled and its debt has been discharged (Dkt. 45 at 11–16).  To

20  hold IUIC responsible for allegations of improper endorsements imposes unjust

21  obligations on the issuer of a check.  Therefore, the Court grants IUIC's motion for

22  summary judgment on Equity's breach of contract claim because IUIC's "obligation has

1  been discharged and [Equity's] cause of action rests ... against Wentwood or Bank of

2  America."  Dkt. 53 at 12.

3                                          **IV. ORDER**

4        Therefore, it is hereby **ORDERED** that IUIC's motion for summary judgment

5  (Dkt. 45) is **GRANTED**.

6        Dated this 14th day of March, 2013.

7

8

9                                          BENJAMIN H. SETTLE
                                           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22